**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ALLIED VETERANS OF THE WORLD, INC.: AFFILIATE 67, ALLIED VETERANS OF THE WORLD, INC.: AFFILIATE 74,**

        **Plaintiffs,**

**-vs-**                                      **Case No. 6:11-cv-155-Orl-28DAB**

**SEMINOLE COUNTY, FLORIDA,**

        **Defendant.**

## ORDER

Plaintiffs and Intervenor-Plaintiffs Empire PhoneSweep and Jack's Business Centers (collectively "Operator-Plaintiffs") operate internet centers in Seminole County, Florida.[1] (Doc. 17 at 2; Intervenor Compl., Doc. 22, at 34). At these centers, Operator-Plaintiffs offer promotional sweepstakes and customers are able to play a video game to discover whether they won the sweepstakes or not. On January 11, 2011, Defendant Seminole County, Florida ("the County") enacted Ordinance 2011-1 ("the Ordinance"), which prohibits "simulated gambling devices," and these sweepstakes games appear to fall within the Ordinance's definition of simulated gambling devices. Consequently, Plaintiffs filed the instant action seeking a judgment declaring the Ordinance to be unconstitutional under the

---

[1] Intervenor-Plaintiff Darrell Agostino is the owner of Jack's Business Centers, and Intervenor-Plaintiff Phone-Sweeps, LLC develops software that is utilized in the sweepstakes games played at internet centers.

First and Fourteenth Amendments to the U.S. Constitution. (Doc. 1). Intervenor-Plaintiffs were granted permission to intervene on February 11, 2011. (Doc. 21).

Subsequently, Plaintiffs and Intervenor-Plaintiffs filed motions for a preliminary injunction (Docs. 17 & 18). Those motions were denied in the Court's Order (Doc. 46) issued on May 6, 2011 ("the May 6 Order"), and Plaintiffs and Intervenor-Plaintiffs filed a Notice of Interlocutory Appeal (Doc. 48) on May 12, 2011. This case is now before the Court on the Motion to Stay Trial Court Proceedings Pending Appeal filed by Plaintiffs and Intervenor-Plaintiffs (Doc. 50) and Defendant's Response (Doc. 56); the Motion for Injunction Pending Appeal filed by Plaintiffs and Intervenor-Plaintiffs (Doc. 51) and Defendant's Response (Doc. 57); and the Notice of Supplemental Authority (Doc. 61) filed by Plaintiffs and Intervenor-Plaintiffs.

The standard for granting a stay of trial court proceedings pending appeal and for granting an injunction pending appeal is generally the same. See Beta Upsilon Chi Upsilon Chapter at the Univ. of Fla. v. Machen, 586 F.3d 908, 914 n.9 (11th Cir. 2009); Hernandez v. Dugger, 839 F. Supp. 849, 851 (M.D. Fla. 1993). In considering the motions, the Court must consider (1) whether the movant is likely to prevail on the merits of its appeal; (2) whether the movant will suffer irreparable harm absent a stay or injunction; (3) whether the other party will suffer substantial harm if the stay or injunction is issued; and (4) whether the stay or injunction is in the public interest. Beta Upsilon, 586 F.3d at 914 n.9; Hernandez, 839 F. Supp. at 851. These are the same factors analyzed in determining whether a court should grant a preliminary injunction, Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000), and therefore, many of the arguments that Plaintiffs and Intervenor-Plaintiffs make in support of

their motions simply re-hash those made in their motions for preliminary injunction without providing any new support. The Court will not re-address those arguments but will take up those that were not discussed previously.

First, Plaintiffs and Intevenor-Plaintiffs assert that the recent Supreme Court opinion in Brown v. Entertainment Merchants Association, 131 S. Ct. 2729 (2011)–decided after the May 6 Order was issued–"rejects the 'conduct not speech' distinction" relied on in that Order. However, Brown is distinguishable. (Doc. 61 at 3). The law at issue in Brown prohibited "the sale or rental of 'violent video games' to minors." Id. at 2732. Plaintiffs and Intevenor-Plaintiffs focus on a footnote in the opinion rejecting the contention that because the regulation only bans the "sale or rental" of violent video games, "rather than the 'creation' or 'possession'" of such games, it is subject to a lower level of scrutiny. Id. at 2734 n.1. However, the Brown Court's rationale is inapplicable here; it reasoned that banning the sale or rental of the games suppressed speech because it banned access to the games–akin to a regulation that allows the writing of books but not the selling of them. Unlike the regulation at issue in Brown, however, the Ordinance in no way bans access to the games. The games at issue here can be made, distributed, played, and accessed by anyone without violating the Ordinance.

Second, Plaintiffs argue that, at the very least, the ordinance regulates speech and conduct and therefore should be analyzed under the test set forth in United States v. O'Brien, 391 U.S. 367, 376-77 (1968). (Doc. 50 at 18; Doc. 51 at 11). As discussed in the May 6 Order, the Ordinance regulates only conduct and therefore it need only withstand

rational basis scrutiny. However, even assuming the O'Brien analysis is appropriate, the Ordinance still passes constitutional muster.

In O'Brien, the Supreme Court recognized that "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." 391 U.S. at 376. Accordingly, "an ordinance is valid if: (1) it serves a substantial interest within the power of the government; (2) the ordinance furthers that interest; (3) the interest served is unrelated to the suppression of free expression; and (4) there is no less restrictive alternative." Flanigan's Enters., Inc. v. Fulton Cnty., 596 F.3d 1265, 1277 (11th Cir. 2010) (quotation omitted).

The County's stated basis for enacting the Ordinance is to protect the public from the deceptive nature of commercial electronic simulated gambling devices. (Ordinance at 2). Furthermore, the County is trying to regulate the secondary effects caused by the "establishments that utilize simulated gambling devices" such as "disturbances of the peace and good order of the community" and hazards to "the public health, safety and general welfare of the citizens of Seminole County." (Id.). This is a substantial interest that is undoubtedly within the power of the County to regulate, and banning simulated gambling devices certainly furthers this interest.

Although Plaintiffs assert that the Ordinance is aimed at suppressing speech, it is not. Again, as discussed in the May 6 Order, "Operator-Plaintiffs are free to provide the video games to their patrons and their patrons are free to play them–and thus make and receive whatever protected message is communicated by the video game–so long as the games are

-4-

not associated with the conduct of a payoff." (May 6 Order at 6-7). However, even if there were an incidental burden on speech, it would be "'no greater than is essential, and therefore is permissible'" because the Ordinance is a "'neutral regulation [that] promotes a substantial government interest that would be achieved less effectively absent the regulation.'" First Vagabonds Church of God v. City of Orlando, Fla., 638 F.3d 756, 762-63 (11th Cir. 2011) (quoting United States v. Albertini, 472 U.S. 675, 689 (1985)).

Furthermore, Plaintiff and Intervenor-Plaintiffs' reliance on Citizens United v Federal Election Commission, 130 S. Ct. 876 (2010) is inapposite. The statute at issue in Citizens United prohibited "corporations and unions from using their general treasury funds to make independent expenditures for speech defined as an 'electioneering communication' or for speech expressly advocating the election or defeat of a candidate," id. at 886 (quoting 2 U.S.C. § 441b); in other words, the statute at issue prohibited spending money to make or create speech. The Ordinance here makes no such prohibitions, and the rationale behind the Court's decision in Citizens United is inapplicable.

Plaintiffs and Intervenor-Plaintiffs additionally argue that the payment of money banned by the Ordinance constitutes expressive conduct. This argument also fails. The First Amendment protects "only [] conduct that is inherently expressive," and conduct is not transformed into protected speech merely because "'the person engaging in the conduct intends thereby to express an idea.'" Rumsfeld v. Forum for Academic & Institutional Rights, Inc., 547 U.S. 47, 65-66 (2006) (quoting O'Brien, 391 U.S. at 1679). Furthermore, when "explanatory speech is necessary" to understand the message intended to be conveyed by conduct, it is "strong evidence that the conduct at issue [] is not so inherently expressive that

it warrants protection." Id. at 66. The mere payment of money in this case does not amount to such inherently expressive conduct and does not warrant First Amendment protection.

Finally, Plaintiffs and Intervenor-Plaintiffs argue that this Court's ruling created a new category of unprotected speech. As discussed at length in both this Order and the May 6 Order, the Ordinance regulates conduct, not speech, and even if it did have an incidental impact on speech, the Ordinance is still constitutional under O'Brien. The Court is not creating a new category of unprotected speech.[2]

As the previous discussion illustrates, Plaintiffs and Intervenor-Plaintiffs have failed to show that they are likely to prevail on the merits of their case. Plaintiffs and Intervenor-Plaintiffs have also failed to establish the other considerations for granting a stay or injunction pending appeal. The only threatened injury Plaintiffs and Intervenor-Plaintiffs complain of is the suppression of their First Amendment rights; however, because the Ordinance is not violative of the First Amendment, Plaintiffs and Intervenor-Plaintiffs have failed to show a likelihood of irreparable injury absent an injunction pending appeal. Plaintiffs and Intervenor-Plaintiffs have also failed to show that they would be injured absent a stay of trial court proceedings pending appeal. Additionally, while an injunction would not cause great harm to the County, it would be against the public interest, and staying the trial court proceedings would not be in the interests of justice, nor would it further judicial economy.

---

[2]Indeed, as the County points out, Plaintiffs' and Intervenor-Plaintiffs' analysis–when taken to its logical conclusion–would prohibit the regulation of traditional gambling, which has "been closely regulated or even forbidden, without anyone suspecting that these restrictions violate the first amendment." There to Care, Inc. v. Comm'r of the Ind. Dep't of Revenue, 19 F.3d 1165, 1167 (7th Cir. 1994).

In accordance with the foregoing, it is **ORDERED** that the Motion to Stay Trial Court Proceedings Pending Appeal (Doc. 50) and the Motion for Injunction Pending Appeal (Doc. 51) filed by Plaintiffs and Intervenor-Plaintiffs are **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this 8th day of September, 2011.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party